## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NAJEAN LUCKY,

        Plaintiff,                    Case No. 23-cv-11004

                                        HON. BERNARD A. FRIEDMAN

vs.

LANDMARK MEDICAL OF
MICHIGAN, P.C.,

        Defendant.

_____/

### <u>OPINION AND ORDER GRANTING MOTION TO DISMISS</u>

This matter is before the Court on a motion to dismiss filed by defendant Landmark Medical of Michigan, P.C. ("Landmark"). (ECF No. 9).[1] Plaintiff Najean Lucky has filed a response, and Landmark has replied. (ECF Nos. 11, 12). The Court does not believe oral argument will aid in the resolution of this matter and will not hold a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the motion is granted.

---

[1] Landmark previously filed a motion to dismiss, (ECF No. 6), subsequent to which plaintiff amended her complaint, (ECF No. 8). Accordingly, the earlier motion to dismiss, (ECF No. 6), which is directed to a now-superseded pleading, is denied as moot.

I.   <u>Background</u>

In the operative amended complaint, Lucky urges that Landmark violated the law when it recruited her for employment but then rejected her application upon her disclosure that she was not vaccinated against COVID-19.  (ECF No. 8, PageID.85).

Lucky alleges that Landmark, a national in-home medical care company, has "an inflexible vaccine mandate that obligates employees and job-applicants to be vaccinated from COVID-19 regardless of work location, remote status, or responsibilities." (*Id.*, PageID.85-86).  Lucky states that for her part, she "is a non-denominational Christian" and "seeks to make all decisions, especially those regarding vaccination and other medical decisions, through prayer."  (*Id.*, PageID.86).  She asserts that "God spoke to [her] in her prayers and directed her that it would be wrong to receive the COVID-19 vaccine."  (*Id.*, PageID.87). Urging that her refusal to receive the vaccine stems from a deep religious conviction, she states that this is "demonstrated and epitomized by her willingness to not work for an employer unless they accommodated her religious beliefs to not receive the COVID-19 vaccination."  (*Id.*).  Lucky further urges that "[a]s a non-denominational Christian, [she] does not always subscribe to the religious tenets share[d] by all Christians, and instead [her] religious beliefs arise from her scriptural interpretation and private prayer and communications with God."  (*Id.*).

2

Lucky alleges that she "is not just 'anti-vaccination,'" but that "she prayed to God specifically about the COVID-19 vaccine and was directed by her God that she would suffer spiritual harm if she received the COVID-19 vaccine." (*Id.*, PageID.88).[2] Lucky notes also that her "religious spirituality and faith in God, not any secular non-religious beliefs, are responsible for her refusal to receive the COVID-19 vaccine." (*Id.*, PageID.88).

Lucky asserts that in February 2022, she was recruited by Landmark's Talent Acquisition Manager via LinkedIn for a Behavioral Health Care Manager position. (*Id.*). She says that after confirming her interest in the position and submitting her resume, she was interviewed three days later by Landmark's Talent Acquisition Consultant. (*Id.*). Lucky states that the interviewer spoke positively about Lucky's potential within the company, discussed a starting salary, and informed her that the responsibilities of the position were to be performed half in-person and half remotely. (*Id.*).

Lucky asserts that after these exchanges, the interviewer asked if Lucky was vaccinated from COVID-19. (*Id.*). Lucky says that she "expressed that she has sincerely held *bona fide* religious beliefs precluding vaccination" and that "[t]his statement prompted [the Talent Acquisition Consultant] to end the interview."

---

[2] She also notes, however, that she has made a "decision not to have *any vaccinations*" and that this decision "is based on her religious beliefs that she should not have *any vaccination* enter her body such that her body would be defiled, because her body is a temple." (ECF No. 8, PageID.86) (emphases added).

(*Id.*, PageID.89).  Lucky also notes that the interviewer "stated that she has 'spoken with ten other potential candidates that had been turned down for not being vaccinated.'"  (*Id.*).  Lucky asserts that the interviewer "then claimed that [Landmark] was not accepting any religious or medical accommodations to its COVID-19 vaccine mandate, affirmatively denying Plaintiff's employment without any further discussion." (*Id.*).[3]

The amended complaint includes a single cause of action for violation of Title VII (Religious Discrimination – Failure and Refusal to Hire).  (ECF No. 8, PageID.91).[4]

Landmark has now filed a motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted.   (ECF No. 9).

---

[3] Lucky also notes that "[t]he risk of Plaintiff spreading or contracting COVID-19 through the nature of her employment is somewhat alleviated by the fact that she would be a partially remote employee" and urges that she "could have tested for COVID-19 daily." (*Id.*, PageID.91).

[4] These parties have been before this Court once before on the matter.  In 22-cv-11827, Lucky sued Landmark under Michigan's Elliot-Larsen Civil Rights Act ("ELCRA").   This Court granted Landmark's motion to dismiss because the ELCRA does not include a claim for failure to accommodate religious beliefs, the cause of action pled in that complaint.  (22-cv-11827, ECF No. 12).   However, because Lucky had indicated that she intended to amend her complaint to assert claims under Title VII of the Civil Rights Act of 1964 upon receiving a right to sue letter from the Equal Employment Opportunity Commission, the Court's dismissal was without prejudice to file any such claims.  (*Id.*, PageID.131, 135).   In the present matter, Lucky states that after filing charges of religious and disability discrimination, on February 24, 2023, she received a right to sue letter from the Equal Employment Opportunity Commission.   (23-cv-11004, ECF No. 8, PageID.85-86).

4

Specifically, Landmark argues that the amended complaint "fails to allege a sincerely held religious belief that conflicted with [Landmark's] vaccination requirement and required accommodation." (*Id.*, PageID.103).

Lucky in response urges that the present case is not a traditional failure to accommodate claim and so the traditional analysis cannot apply here "because [Landmark] immediately rejected [Lucky's] job application the instant she asked for a religious accommodation." (ECF No. 11, PageID.196). Lucky urges that because "[s]he never had an opportunity to provide her sincerely held religious beliefs or establish why they prevented her from COVID-19 vaccination," this is "discrimination in its purest form" and Landmark "refused to hire [Lucky] because of her religion." (*Id.*). Lucky also argues that her amended complaint "extensively pleads the manner in which Plaintiff's religiosity precluded her from vaccinating against COVID-19." (*Id.*, PageID.205).

## II.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is properly granted if the complaint fails to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The Court construes the complaint in the light most favorable to the plaintiff, presumes the truth of all factual assertions, and draws every reasonable inference in favor of the plaintiff. *Bassett v. NCAA*, 528

F.3d 426, 430 (6th Cir. 2008).  But "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (cleaned up).

III.   <u>Analysis</u>

Notwithstanding Lucky's assertion that this is not a traditional failure to accommodate claim, (ECF No. 11, PageID.196), the parties seem to agree on at least the first element of the claim before the Court.  *See* (Amend. Compl.) (ECF No. 8, PageID.92, ¶ 51) (identifying the following as the first element of a *prima facie* religious discrimination case: that the plaintiff "hold[s] sincere religious beliefs that conflict with an employment requirement") (citing *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015)); (Mot. Dismiss) (ECF No. 9, PageID.105) ("[t]o bring any claim of religious discrimination, Plaintiff must allege a sincerely held religious belief that conflicts with an employment requirement") (citing *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)); (Resp. Mot. Dismiss) (ECF No. 11, PageID.202) (identifying as the first element of a claim for refusal to hire that the plaintiff "(1) holds a sincere religious belief that conflicts with an employment requirement") (citing *EEOC v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684, 693 (M.D. Tenn. 2020)).

Landmark's motion to dismiss urges that, even assuming the truth of all of the allegations in the complaint, Lucky has failed to plead facts supporting this element – that Lucky has a sincerely held religious belief that conflicts with an employment requirement.  (ECF No. 9).  The Court agrees.

A. *Cases cited by Lucky are materially distinguishable.*

Lucky argues that her amended complaint "extensively details how Plaintiff's sincere religious beliefs preclude COVID-19 vaccination."  (ECF No. 11, PageID.202).  She further cautions that "[f]ederal courts are reluctant to rule that an individual's beliefs are not religious in nature" and analogizes to three cases in which, she says, courts rejected an employer's efforts to dispute the sincerity of the employee's beliefs.  (*Id.*, PageID.205-06).  The comparison is unavailing, however, because the cases are factually dissimilar.

In *Keene v. City & County of San Francisco*, No. 22-16567, 2023 WL 3451687 (9th Cir. May 15, 2023), plaintiffs "sw[ore] that they [were] Christians who 'believe in the sanctity of life.'"  *Id.* at *2.  They retired when their employer denied a religious exemption from its COVID-19 vaccine mandate, "as they swore that they could not receive a vaccine 'derived from murdered children' without violating their religious beliefs." *Id.*  The Ninth Circuit reversed the district court's decision to deny a preliminary injunction and remanded, noting in doing so that

"[a] religious belief need not be consistent or rational to be protected under Title VII, and an assertion of a sincere religious belief is generally accepted." *Id.*

In *Jackson v. New Jersey Juvenile Justice Commission*, No. 19-17950, 2023 WL 22497 (D.N.J. Jan. 3, 2023), plaintiff was a practicing Muslim employed as a senior correctional police officer. *Id.* at *1. When selected for a random drug test, plaintiff was unable to produce a urine sample and ultimately refused to consume additional water, a position he related to his fast during the holy period of Ramadan. *Id.* at *3-4. Although there was evidence that Ramadan had ended on the day in question and that the tenets of Islam required him to accordingly *break* his fast, in denying summary judgment the court rejected the defendant's argument that plaintiff had failed to establish a *bona fide* religious belief because his individual practices conflicted with the central tenets of Islam. *Id.* at *4, 10. Instead, the court indicated that it could "look to whether beliefs are sincerely held and whether they are, in the plaintiff's own scheme of things, religious" but could not "inquire whether the plaintiff correctly perceived the commands of his faith." *Id.* at *10 (cleaned up).

Finally, in *EEOC v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684 (M.D. Tenn. 2020), the EEOC alleged that defendant supermarket interviewed an individual, Usher, for a part-time position, at the conclusion of which the interviewer told Usher that he would have to cut his hair to work there. *Id.* at 689.

Usher contended that his practice of Rastafarianism included maintaining his hair in dreadlocks – a practice he traced to the Lion of Judah and Leviticus – and asserted that the supermarket refused his request for a religious accommodation to its grooming policy. *Id.* at 689-90, 700.  In denying summary judgment, the district court rejected defendant's argument that, as a matter of law, Usher's stance on dreadlocks could not constitute a sincere religious belief because Usher had conceded that it was possible to be a member of his religion without wearing dreadlocks and had further conceded that he personally did not follow all Rastafarian beliefs. *Id.* at 700.  Rather, the court held that "judging the sincerity of a person's religious beliefs is a 'quintessential fact question.'" *Id.*

Each of these cases involved a clearly identified religious practice or belief (respecting the sanctity of life by rejecting vaccines derived from fetal tissue; observing a fast during Ramadan; maintaining dreadlocks in conformity with Leviticus) and a distinct conflict with an employment requirement.  Here, however, the Court is presented only with the nebulous claim that, as a "non-denominational Christian," Lucky "seeks to make all decisions, especially those regarding vaccination and other medical decisions, through prayer"; that "God spoke to [her] in her prayers and directed her that it would be wrong to receive the COVID-19 vaccine"; and that she "does not always subscribe to the religious tenets share[d] by all Christians" but that her "religious beliefs arise from her scriptural

interpretation and private prayer and communications with God." (ECF No. 8, PageID.86-87). Unlike the cases cited by Lucky, here she has not identified any particular religious practice or belief that is in conflict with an employment requirement.

B. *Cases cited by Landmark more closely align with the facts of this case.*

The Court finds that the instant case is more akin to the cases identified by Landmark.

In *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360, 2023 WL 362392 (E.D. Penn. Jan. 23, 2023), plaintiff was a nurse that had received a religious accommodation to defendant's COVID-19 vaccine mandate which allowed her to submit to regular COVID-19 screening tests in lieu of vaccination. *Id.* at *1. When plaintiff was informed that the tests would occur via nasal swab in the presence of her manager, she objected on the grounds that "observance of her religious beliefs forbids insertion of an unwanted foreign object[ ] into her body." *Id.* at *2. Although she offered to take a saliva test instead, and although she submitted an email challenging the factual and scientific basis for defendant's testing requirement, she was ultimately terminated. *Id.* In granting defendant's motion to dismiss, the district court recognized that it did not have authority to question the centrality of particular beliefs or practices of faith but noted that "the very concept of ordered liberty precludes this Court from allowing any person a

10

blanket privilege to make his own standards on matters of conduct in which society as a whole has important interests." *Id.* at \*4 (cleaned up). Because plaintiff had "fail[ed] to plead any additional information about the religious nature of her beliefs," and in reviewing the factual and scientific objections raised in her email, the court concluded that "the basis for Plaintiff's belief is political, sociological, or philosophical – and not religious." *Id.* at \*8 (cleaned up). Applying Third Circuit precedent, the court further found that "although sincerely held, Plaintiff has not sufficiently pleaded that her applicable belief is religious." *Id.*

> Plaintiff's Complaint and the attachments thereto fail to plead any information as to the nature of Plaintiff's "religious beliefs" that "forbid insertion of an *unwanted* foreign object into her body." . . . Plaintiff's belief that she is forbidden from doing something Plaintiff herself deems "*unwanted*" is, absent further pleading regarding the religious nature of the belief, akin to asserting "a blanket privilege ... for avoiding all unwanted obligations."

*Id.* (cleaned up).

Lucky is correct in her observation that the court in *Blackwell* ultimately determined that the plaintiff's belief was political, sociological, or philosophical rather than religious and that here Lucky has specifically pled that her "religious spirituality and faith in God, not any secular non-religious beliefs, are responsible for her refusal to receive the COVID-19 vaccine." (ECF No. 8, PageID.88); (ECF No. 11, PageID.213). While true, the Court finds that the "blanket privilege" in *Blackwell* is meaningfully similar to the blanket privilege asserted here and that the

same concerns apply. The *Blackwell* plaintiff alleged she was forbidden from doing something she herself deemed unwanted; Lucky alleges that her religious beliefs arise from her own scriptural interpretation and private prayer and communication with God and that God spoke to her in her prayers and instructed her not to receive the vaccine. *Blackwell*, 2023 WL 362392, at *8; (ECF No. 8, PageID.87).[5]

In *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458 (M.D. Pa. 2022), the named plaintiff received a religious accommodation to her employer's vaccine mandate, was told that she must instead take a COVID-19 test twice a week, and unsuccessfully sought a further religious exemption from this requirement on the grounds that

> I am a Christian and hold a sincere religious belief that I have a God given right to make my own choices regarding what is good or bad for me. The Bible says that man has free will and I am using my free will, granted to me by God, to reject the testing conditions placed on my approved religious exemption. I work from home and [am] required to test twice weekly using the at home kit – Quick Vue

---

[5] Lucky also urges that the comparison to a "blanket privilege" is misplaced "because Plaintiff is not just 'anti-vaccination'" but "[r]ather, Plaintiff prayed to God specifically about the COVID-19 vaccine and in return, God instructed Plaintiff to refrain from vaccinating against COVID-19 because she would suffer spiritual harm." (ECF No. 11, PageID.208). The Court notes that while Paragraph 21 of the Amended Complaint denies that plaintiff is "anti-vaccination," this is undermined by Paragraph 12 of the Amended Complaint which asserts that plaintiff has taken a "decision not to have *any vaccinations*" and that this decision "is based on her religious beliefs that she should not have *any vaccination* enter her body such that her body would be defiled, because her body is a temple." (ECF No. 8, PageID.86, 88) (emphases added).

> SARS Antigen Test. Per the information on the packaging, it states:
> The QuickVue SARS Antigen Test has not been FDA cleared or
> approved but has been authorized by the FDA under an Emergency
> Use Authorization (EUA). I believe it is not an emergency for
> Geisinger to require an employee who works from home, with zero
> patient/employee contact to test in this with manner with a product
> that is not FDA approved. This violates my sincerely held religious
> belief and I believe testing in this manner is a bad choice for my
> health and body. I believe there are chemicals/carcinogens associated
> with the swab and testing material. I'm afraid of the side effects and
> potential future health risks these chemicals may cause with this
> repetitive use. I believe this testing is toxic and it's only EUA
> approved, therefore I do not want to be part of an experiment.

*Id.* at 461-63 (alterations in original).  She sued her former employer alleging religious discrimination, but the district court granted defendant's motion to dismiss, finding that her stated beliefs about testing were medical and not religious. *Id.* at 465.   Again relying on Third Circuit precedent, the court held that "Finkbeiner's statement—which centers on her free will and belief that Covid-19 vaccines and tests are harmful and unnecessary—fails to establish sincere religious opposition under this framework."  *Id.*  As in *Blackwell*, the court noted that

> her belief that she has a "God given right to make [her] own
> choices"—which, implicitly, her employer must unfailingly respect—
> would amount to "a blanket privilege" and a "limitless excuse for
> avoiding all unwanted . . . obligations." Though fungible enough to
> cover anything that Finkbeiner trains it on, this belief "is an 'isolated
> moral teaching' . . . not a comprehensive system of beliefs about
> fundamental or ultimate matters."

*Id.* at 465-66 (footnotes omitted).   The court also noted that her statement "reinforce[d] that her opposition stems from her medical beliefs."  *Id.* at 466.

Lucky objects to the comparison to *Finkbeiner* on the same grounds that she objected to *Blackwell*. (ECF No. 11, PageID.214). However the Court finds the same qualified comparison to be appropriate. Moreover here, as in *Finkbeiner*, Lucky's own statement indicates that her stance on COVID-19 relies on more than just her purported religious beliefs. Finkbeiner's request for an accommodation to defendant's testing requirement urged that as someone who worked from home, she would have no patient or employee contact. *Finkbeiner*, 623 F. Supp. 3d at 463. Similarly here, Lucky urges that "[t]he risk of Plaintiff spreading or contracting COVID-19 through the nature of her employment is somewhat alleviated by the fact she would be a partially remote employee." (ECF No. 8, PageID.91).

In *Ellison v. Inova Health Care Services*, No. 1:23-cv-00132, 2023 WL 6038016 (E.D. Va. Sept. 14, 2023),[6] one of the plaintiffs sought an exemption from his employer's vaccine mandate on the grounds "that the Christian Bible requires him to treat his body as a temple of the Holy Spirit." *Id.* at *5 (cleaned up). Similar to Lucky's claim here, he asserted that "it is a God-given responsibility and requirement for him to protect the physical integrity of his Body. And he further explained that he does so by praying over every decision he makes concerning his

---

[6] This amended opinion superseded the decision cited by defendants, *Ellison v. Inova Health Care Services*, No. 1:23-cv-00132, 2023 WL 4627437 (E.D. Va. July 19, 2023).

14

body or his health." *Id.* (cleaned up).  In granting the motion to dismiss, the district court found that the plaintiff had failed to establish a sincere religious objection under Third Circuit precedent.  *Id.*  Plaintiff's "belief that if, after his prayer, God answers and interdicts his participation, amounts to the type of blanket privilege that undermines our system of ordered liberty. Certainly, if taken to its logical extreme, [plaintiff's] claim would serve as a limitless excuse for avoiding all obligations." *Id.* (cleaned up).

Lucky objects to the comparison to *Ellison* as it relies on the aforementioned Third Circuit precedent, *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981). (ECF No. 11, PageID.215).  Lucky urges that "*Africa* examined the 'religious in nature' question in a different backdrop[,] a prisoner alleging a violation of the First Amendment" and she notes that the three-part test laid out in *Africa* "has not been adopted by the Sixth Circuit and is not binding." (*Id.*, PageID.215-16).  The Court agrees that *Africa* is not binding but finds that the cited cases which rely upon it provide a helpful comparison in this instance.  Moreover, Lucky's objection to any reliance on *Africa* is undermined by her own citation to the case elsewhere in her brief.  (ECF No. 11, PageID.205) (quoting *Africa*).

Defendant next draws the Court's attention to *Griffin v. Massachusetts Department of Revenue*, No. 22-cv-11991, 2023 WL 4685942 (D. Mass. July 20, 2023).  *Pro se* plaintiff Griffin was terminated from her employment when she

refused to be vaccinated against COVID-19 and was denied a religious exemption to the requirement. *Id.* at *1-2. Griffin alleged that her decision not to be vaccinated was a sincerely held religious belief as, in her words, she had "closely contemplated with God and ha[d] been shown that [she] should not receive the COVID-19 vaccine." *Id.* at *1 (cleaned up). She had "not alleged that she [was] a member of any specific church or faith, or other form of organized religion." *Id.* The court "assume[d] that plaintiff believes in God in her own individualized way, and that she [held] that belief sincerely," but nevertheless granted the motion to dismiss because "[s]he was not . . . terminated because she believes in God; she was terminated because she refused to be vaccinated." *Id.*

> In short, plaintiff is entitled to practice her religion in her own individualized way, without undue interference or discrimination. Nonetheless, courts are empowered to screen claims of religious discrimination that arise out of *bona fide*, facially neutral employment requirements, where the claim of religious practice appears to be entirely *ad hoc* or otherwise without a plausible factual basis.
> . . .
> [Plaintiff's] statements are nothing more than a bare representation that the basis of plaintiff's objection to vaccination derives from a religious belief. Plaintiff does not describe her religious beliefs or principles in any meaningful way, or how they relate to vaccines generally, or the COVID-19 vaccine specifically. Put another way, she does not allege that her religion requires her to observe certain medical limitations that include a refusal to take vaccines, or certain types of vaccines. And there is no specific indication as to how her beliefs or principles have affected other medical decisions in the past. In short, it does not appear that her opposition to the COVID-19 vaccine in particular derives from a religious belief about vaccines in general, or indeed any preexisting principle of any kind. Instead, she describes her belief as a result of a

16

> personal practice of "praying on it" when faced with difficult life decisions.
>
> . . .
>
> Again, while plaintiff is entitled to practice her own individualized form of faith, she is not entitled to a virtually automatic exception from the vaccination requirement, based solely on her own representation that it violates her religious principles on an *ad hoc* basis. The complaint must allege some plausible set of facts from which it may be reasonably inferred *both* that she believes in or practices a particular form of religion *and* that her religion has a specific tenet or principle that does not permit her to be vaccinated. It is true that, unlike the plaintiff in [a different case], she stated that her objections derive from a belief in God, rather than skepticism over the efficacy or health impacts of the vaccine. But her unadorned declaration that God had "shown" her that she should not receive the vaccine, without more, is insufficient to establish a plausible basis to infer that the beliefs or practices of her religion prevent her from being vaccinated against COVID-19.

*Id.* at *6-7 (cleaned up) (footnote omitted).

Here Lucky asserts that she has cured the defects that were identified by the court in *Griffin* because her amended complaint is "far more detailed than the *pro se Griffin* plaintiff's complaint because Plaintiff's Amended Complaint describes the specific tenets of Plaintiff's religion that preclude her from vaccination." (ECF No. 11, PageID.215). The Court disagrees. Fundamentally, Lucky's amended complaint asserts that she is a non-denominational Christian that seeks to make all decisions through prayer and that God instructed her through prayer not to receive the COVID-19 vaccine. *See* (*id.*). Contrary to Lucky's assertion, this does *not* amount to significantly more than "a bare representation that the basis of plaintiff's objection to vaccination derives from a religious belief." *Griffin*, 2023 WL

17

4685942, at \*7.  She "does not describe her religious beliefs or principles in any meaningful way, or how they relate to vaccines generally, or the COVID-19 vaccine specifically." *Id.*  The comparison to *Griffin* is apt and fatal to her claim.

The Court is mindful that it is not in a position to "question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). And as the Supreme Court has said in a different context, determining what constitutes a "religious" belief or practice is a "difficult and delicate task" and must "not . . . turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others." *Thomas v. Rev. Bd. Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). Here, however, Lucky's complaint fails to provide allegations from which it can reasonably be inferred that "that she believes in or practices a particular form of religion and that her religion has a specific tenet or principle that does not permit her to be vaccinated." *Griffin*, 2023 WL 4685942, at \*7 (emphasis omitted).  That is, the complaint does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" because it "offers labels and conclusions" and only "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up).

C. *Lucky's alternative argument against dismissal fails to address the motion before the Court.*

Lucky further argues that her amended complaint should not be dismissed because "[Landmark] terminated [Lucky's] job application immediately after [Lucky] informed [the interviewer] that she possessed religious beliefs, but before she could share her religious beliefs."  (ECF No. 11, PageId.202); *see also* (*id.*, PageID.204) ("Defendant should not be allowed to retroactively challenge Plaintiff's religiosity because Defendant did not afford Plaintiff the opportunity to explain the specific conflict between her sincere religious beliefs and Defendant's COVID-19 vaccine requirement during her interview").  Lucky does not provide any explanation as to how this would alter or answer the question before the Court. The motion to dismiss attacks what was pled in the complaint, not whether Lucky could or would have provided more information about her alleged religious objection to the vaccine during the interview.   Regardless of whether Lucky explained the conflict between her views and the vaccine requirement during the interview, her views do not amount to a sincerely held religious belief that conflicts with an employment requirement.  Put differently: the instant motion to dismiss is addressed to the first element of a religious discrimination claim: whether Lucky had a sincerely held religious belief that conflicted with an employment requirement.  What she told her prospective employer goes to the

19

second element of the claim, whether she informed the employer about the conflict.  *See* (ECF No. 11, PageID.202).

D. *The Court need not reach Landmark's alternative argument in support of dismissal.*

In its reply brief, Landmark urges that Lucky cannot show she was treated differently than any other unvaccinated individual and thus her claim "fails regardless of whether she can assert a sincerely held religious belief that conflicted with the vaccine requirement."  (ECF No. 12, PageID.300-02).  The Court need not address this argument given its finding that Lucky has failed to plead that she held a religious belief that conflicted with an employment requirement.

In sum: both sides agree that Lucky was required to plead the existence of a sincerely held religious belief that conflicted with an employment requirement. The Court finds that Lucky failed to do so.  Accordingly, it is hereby,

ORDERED that defendant's earlier motion to dismiss (ECF No. 6) is DENIED AS MOOT.

IT IS FURTHER ORDERED that defendant's second motion to dismiss (ECF No. 9) is GRANTED.   Plaintiff's amended complaint (ECF No. 8) is DISMISSED.

**SO ORDERED.**

s/Bernard A. Friedman
Hon. Bernard A. Friedman
Senior United States District Judge

Dated: October 26, 2023
        Detroit, Michigan